**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

CHERYL BALL, as guardian
and next friend of C.S., a minor

                Plaintiff,

v.                             CIVIL ACTION NO.   5:10-cv-00955

CHRIS BAKER, et al,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Cheryl Ball, as guardian and next friend of C.S., a minor, brings this civil action against Greenbrier County Deputy Sheriff, Chris Baker, former Sheriff of Greenbrier County, Roger Sheppard, and current Sheriff of Greenbrier County, James Childers.   Ball alleges common law tort claims for the alleged sexual contact between Deputy Sheriff Baker and C.S.   The Court has reviewed *Defendants', Roger Sheppard, Individually and in His Official Capacity as Sheriff of Greenbrier County [sic], and James Childers, in His Official Capacity as Sheriff of Greenbrier County, Motion for Summary Judgment* ("Defs.' Mot.") (Document 30).   After careful consideration of the motion, the memoranda submitted in support thereof (Document 31), in opposition thereto (Document 32), and in reply (Document 35), together with the attached exhibits, the Court, for the reasons that follow, grants in part and denies in part Defendants' motion.

The Court has also considered *Defendants', Roger Sheppard, Individually and in His Official Capacity as Sheriff of Greenbrier County [sic], and James Childers, in His Official*

*Capacity as Sheriff of Greenbrier County, Motion to Exclude Patrick J. Welsh* ("Mot. to Exclude")

(Document 33), Defendants' memorandum in support of the motion (Document 34) and Plaintiff's

opposition (Document 36).   For the reasons stated below, the Court denies Defendants' motion to

exclude.

## I.   BACKGROUND

On September 18, 2009, Cheryl Ball filed a "Report of Complain [sic] Against Law

Enforcement Personnel" with the Greenbrier County Sherriff's Department against Defendant

Deputy Sheriff Christopher Baker. (Defs.' Ex. 11.)   In support of her complaint, Ball provided the

following complaint narrative:

> Since June of 2009 Deputy C. Baker has coerced my daughter,
> who is 16 years of age to sneak out of my apartment at night on
> numerous occasions.  My daughter has admitted to me that on at
> least 6 different occasions she and Deputy C. Baker have had sexual
> intercourse.  This happened in his cruiser on Snake Island Road
> while he was on duty.  According to my daughter he would cruise
> by my apartment, texting and calling her on his cell phone to see if it
> was clear for her to sneak out and leave with him in his cruiser.  I
> found out about this from a friend, Vivian Bustle on Sept. 17, 1009,
> thru [sic] a written letter. I confronted my daughter after school on
> Sept. 17 and she admitted to everything to me.
>      I want to see Chris Bake [sic] fired and criminally prosecuted.
> I will talk to an attorney about any civil action I can take.

(Defs.' Ex. 11 at 3.)   On the same day, Defendant Sheriff James W. Childers notified Baker in a

written letter that he was being placed on administrative leave with pay pending the outcome of an

investigation into the complaint. (Defs.' Ex. 12.)   Childers also ordered Baker not to have any

contact, directly or indirectly, with the complainants during the investigation.   Three weeks later,

on October 9, 2009, Sheriff Childers issued a written letter of dismissal to Baker.   The Sheriff

advised Baker that he was charged with violation of the rules and regulations of the Greenbrier

2

County Sheriff's Department and West Virginia law.   Sheriff Childers disclosed the investigation revealed that "[o]n multiple occasions from June 2009 and September 17, 2009, [Baker had] engaged in felonious sexual contact and sexual intercourse with a female child under the age of eighteen years on at least six separate occasions in violation of West Virginia Code § 61-8D-5(a)." (Defs.' Ex. 13 at 1.)   This conduct occurred, as Ball complained, while Baker was on duty and in uniform as a Deputy Sheriff.   Childers further disclosed that the investigation revealed that Baker "solicited, on multiple occasions, a minor child less than eighteen years of age to pose for and send to [him] nude photographs" and that he "feloniously sent nude photographs to the minor child." (Defs.' Ex. 13 at 2.)   Consequently, Childers notified Baker that his conduct constituted violations of various provisions of the West Virginia Code for: (1) sexual abuse by a person in a position of trust, (2) obstructing an officer, (3) making false statement to an officer, (4) interfering with a witness, (5) distribution of obscene material to a minor, and (6) attempted sexual exploitation of a child.[1]   (*Id.*)   Childers also considered Baker's conduct during the investigation.   He advised that Baker provided false, incomplete, misleading and untruthful information to the investigating officer, failed to cooperate in the investigation, refused an order to submit to an interrogation, communicated with the minor child despite being told not to, and directed the minor to provide false information to the investigating officer.[2]   Childers also informed Baker that his conduct

---

[1]    The letter contained a paragraph which read: "Violations of the criminal code . . . are administrative charges only and do not preclude the Prosecuting Attorney from initiating criminal prosecution for any or all of the criminal violations alleged[.]"   (Defs.' Ex. 13 at 1.)   Plaintiff asserts that as of January 23, 2012, Baker had not been charged with any criminal conduct.   (Response to Defendants' Roger Sheppard, Individually and in His Official Capacity as Sheriff of Greenbrier County, and James Childress, [sic] In His Official Capacity as Sheriff of Greenbrier County, Motion for Summary Judgment ("Pl.'s Opp'n") (Document 32) at 2.)

[2]    Apparently during the investigation, Baker denied communicating with the minor child by telephone or text message, that he had been to her house in his cruiser and that he had any relationship of any kind with the minor child. (Defs.' Ex. 13 at 2.)

constituted violations of the following provisions of "Departmental Policy": Obedience to Laws
and Regulations (two instances), Truthfulness (two instances), Insubordination (two instances),
Refusal to Obey Orders, Violating Laws and Ordinances (two instances) and Conduct
Unbecoming an Officer (three instances).   (Defs.' Ex. 13 at 2.)

At the time of this incident, Baker had been employed as a Greenbrier County Deputy
Sheriff for over two years, having been hired by former Greenbrier County Sheriff, Defendant
Roger Sheppard.   Baker applied for employment with the West Virginia Civil Service System in
September 2005, when he was twenty-six years old.[3]   (Defs.' Ex. 5).   At that time, he was
working as a Corrections Officer for the Augusta Correctional Center in Virginia.   In March
2007, Baker was notified that he was one of three applicants certified by the Greenbrier County
Civil Service Commission for the position of deputy sheriff.   (Defs.' Ex. 5 at 3).   On May 2,
2007, Sergeant K.W. Hanson completed a background investigation of Baker that revealed minor
traffic citations, a civil confessed judgment against Baker, and civil case records indicating that he
was alleged to have been the cause of a lawsuit against Stop-in Food Stores in 2002. (Defs.' Ex. 7
at 1.)   The investigation revealed that Baker, on July 2, 2000, while employed at the convenience
store, allegedly was observed to have "'look[ed] through a hole in the wall' at a female using the
public restroom of the store."   (Defs.' Ex. 7 at 1; Defs.' Ex. 14 at 2-3.)   Baker was not a party to
the civil suit.   Stop-In Food Stores subsequently settled the civil action prior to trial.   The
background report also revealed that Defendant Baker, while employed at Augusta Correctional
Center, received "good reviews and several commendations." (*Id.*)   He was cited only with minor

---

3    In completing his application, Defendant Baker revealed that he had never been discharged or forced to resign
employment. (Defs.'   Ex. 5 at 1).

violations for tardiness to work and one incident of "not being clean shaven." (*Id*.)

Sergeant K.W. Hanson provided this background investigation to then Sheriff Sheppard. Sheppard served as the sheriff of Greenbrier County from 2005 to mid-2009.   Prior to review of the background check, Sheppard testified during his deposition that he did not know about the Stop-in Food Stores incident. (Defs.'Mot. Ex. 4, Transcript of Roger Sheppard July 21, 2011 at 9). He further testified that prior to hiring Baker, he reviewed the background investigation report, the Greenbrier County Investigation report of the incident and information about the civil litigation. (*Id*. at 6-7, 11).   He also discussed the incident with Baker. (*Id*. at 12.)   He testified as follows:

> Question from counsel: And what did Mr. Baker tell you about those allegations?
>
> Answer from Sheppard: He just told me that he was – had been working on something in the bathroom and the man came in and caught him in the bathroom.   And pretty much, that's it.

(*Id*. at 12.)   Sheppard believed that the Stop-in Food Stores incident involved a man who thought Baker was looking through a hole in the wall at his wife. (*Id*. at 13).   Sheppard questioned Baker about this statement and Baker told him it was not true. (*Id*. at 14.)   Sheppard also testified that the Stop-in Food Stores incident did not concern him in his hiring decision.   Specifically, his testimony included the following:

> Question from counsel: Okay, Now, with that being said and this dispute and these allegations [referring to the Stop-in Food Stores incident], did that give you concern as to whether Mr. Baker could be a deputy sheriff?
>
> Answer from Sheppard: No, sir.
>
> Question from counsel: That didn't concern you at all?
>
> Answer from Sheppard: If they were true, it would concern—it concerned me.   But having done the ---these investigations was

5

[sic] done before I was sheriff, okay? A couple years before I was sheriff or ever how long they are.  He was not charged with anything, with a crime.  He was not named in the lawsuit as a party in the lawsuit.  And at the time I took over as being sheriff, I – I didn't even, you know, know how to get ahold of [the Stop-in Food Stores complainants] if I wanted to.

I talked to, you know, through some of his other testing, I talked to the psychologist about it and made her aware of it that did the psychological testing, and he passed his psychological tests. So he passed every test we gave him.

(Defs.' Ex. 4 at 14-15.) On June 12, 2007, after satisfying various examination requirements, Baker began working full time as a deputy sheriff in Greenbrier County, West Virginia.[4]

The record reveals that at the time Baker was hired, he was not given any written policies and procedures of the Greenbrier County Sheriff's Department.   Although, Sheppard's deposition testimony was not clear, it appears that an older version of the Department's policy and procedure under a previous Sheriff existed and remained in the office for Baker and others to look at and read. (Defs.' Ex. 4 at 17-18, 20-21.)   Additionally, a written Greenbrier County Sheriff's Department Rules of Conduct document, adopted in 1985, existed during Sheppard's tenure as Sheriff.   However, the Department never had that copy of the Rules of Conduct. (*Id*.)   Sheppard also testified that after Baker was hired, he received a fourteen or fifteen week training session at the State Police Academy, as well as annual in-service firearm training. (*Id*. at 16-17.)   However, he was not aware what was taught with respect to professional standards. (*Id*. at 26.)   No other training was provided.   Baker was assigned to a senior deputy for a time period after his graduation from the Academy, and thereafter, worked under a senior officer.   Sheppard testified that he was not aware of anyone ever telling Baker that he was not to engage in sexual activity in

---

4     Defendant Baker had to complete five pre-hire entry level examinations, including a physical examination, psychological examination and a background investigation.   (Defs.' Ex. 5).

his cruiser car or that he should not commit a crime, but he believed that "a police officer had more sense than to do that." (*Id*. at 23, 27.)

Finally, Sheppard admits that he has a familial relationship with Baker.  Baker is his daughter-in-law's brother. (Defs.' Ex. 9, Responses of Defendant, Roger Sheppard, to Plaintiff's First Set of Interrogatories at 1) ("Chris Baker is Mr. Sheppard's son's wife's brother.") However, Sheppard testified that he "just don't feel that [he is] related to [Baker] in any way." (Defs.' Ex. 4 at 8.)   At the time of the incident alleged in this civil action, Sheppard was no longer Sheriff of Greenbrier County and he did not have any role in the investigation of Ball's allegations. (*Id*. at 24.)

This action was initiated in the Circuit Court of Greenbrier County, West Virginia, on June 29, 2010, and was later removed to this Court on July 26, 2010.   Plaintiff asserts four causes of action: negligent hiring, training and supervising of personnel (Count I) against Defendant Sheppard, and common law assault and battery (Count II), intentional or negligent infliction of emotional distress (Count III) and violation of W. Va. Code § 61-8D-5 sexual abuse by a parent, guardian, custodian or person in a position of trust to a child (Count IV), all against Defendant Baker. (Notice of Removal, Ex. 1, Complaint (Document 1-1). ¶¶ 16-26.)   Plaintiff seeks past, present, and future compensatory damages, punitive damages, attorney fees, expert fees and other costs, and other damages allowable by law.[5]

---

5     On October 17, 2011, the West Virginia Counties Group Self-Insurance Risk Pool, Inc., doing business as, West Virginia County Risk Pool ("Risk Pool"), moved to intervene for the purpose of seeking a declaratory judgment that it owes no duty to defend or indemnify Defendant Chris Baker with respect to the allegations in the Complaint. (Document 26.)   On February 7, 2012, this Court granted the Intervenor's motion for leave to intervene. (*See* Memorandum Opinion and Order (Document 37)).   The same day, the Intervenor Complaint for Declaratory Judgment was filed in this case (Document 38). However, to date, no responsive pleading has been filed by any party. The Intervenor has since moved for a declaratory judgment in its favor (Document 43).   The Court will consider that motion in a separate order.

## II.    STANDARD OF REVIEW

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.   The well established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986).   A "material fact" is a fact that might affect the outcome of a party's case.   *Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   (*Id.*)   The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   *Celotex*, 477 U.S. at 322-23. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."   *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the nonmoving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."   *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

Rule 56 of the Federal Rules of Civil Procedure requires that:

> [a] party asserting that a fact cannot be or is genuinely disputed
> must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).   In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter."   *Anderson*, 477 U.S. at 249.   Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).   If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.

## III.   DISCUSSION

### A.  Defendants' Motion to Exclude

Defendants move to exclude the opinions, report and testimony of Plaintiff's expert, Patrick J. Welsh, pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, on the basis the Plaintiff "failed to properly and timely disclose Mr. Welsh's curriculum vitae and report and failed to provide any information regarding Mr. Welsh's opinions and qualifications in accordance with the Court's Scheduling Order and the Federal Rules of Civil Procedure."   (Defs.' Mot to Exclude at 1.)

Rule 26 of the Federal Rules of Civil Procedure imposes specific requirements for the disclosure of discovery, lay witness and expert testimony during the discovery period.   Relevant

to the instant dispute, Rule 26(a)(2)(A) requires the disclosure of "the identity of any witness [a party] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."   Fed. R.Civ.P. 26(a)(2)(A).   If the witness is retained or specially employed to provide expert testimony in the case, a party is also required "[u]nless otherwise stipulated or ordered by the court" to include with its disclosure a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them"; "the facts or data considered by the witness in forming them"; and "the witness's qualifications, including a list of all publications authored in the previous 10 years." Fed.R.Civ.P. 26(a)(2)(B)(i)-(ii) and (iv). Further, parties are also obligated to "timely" supplement Rule 26(a) disclosures, interrogatory responses and expert witness reports.  *See* Fed.R.Civ.P. 26(e).  If a party fails to do so, Rule 37(c)(1) establishes that certain consequences may follow.

Specifically, Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless."  Fed.R.Civ.P. 37(c)(1) (emphasis added).  The Fourth Circuit Court of Appeals has recently reiterated five factors district courts must examine to discern whether the failure of a party to make its disclosures was "substantially justified . . . harmless." Those factors include:

> the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

*Hoyle v. Freightliner, LLC*, 650 F.3d 321, 329-30 (4th Cir. 2011) (citing *Southern States Rack and*

*Fixture v. Sherwin–Williams Co*., 318 F.3d 592, 596 (4th Cir.2003) (internal quotation marks omitted)).   The Fourth Circuit has instructed that district courts are "not required . . . to expressly consider each factor when evaluating discovery violations." (*See id*.)   It is the burden of the party facing sanctions to show that the failure to comply was either substantially justified or harmless. *Southern States*, 318 F.3d at 596 (citations omitted).   Moreover, the Fourth Circuit has provided that "[t]he district court has 'broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless.'" (*Id*. at 597.)   The exclusionary sanction of Rule 37(c)(1) "does not require a finding of bad faith or callous disregard of the discovery rules." (*Id*. at 596.)

The Scheduling Order governing this case provided that Plaintiff must disclose her expert witnesses, pursuant to Rules 26(a)(2)(A) and (B) of the Federal Rules of Civil Procedure, by October 24, 2011. (Scheduling Order (Document 9) ¶ 3).   Further, the order established a deadline of December 22, 2011, for the completion of all discovery, including depositions.   (*Id*. ¶ 1.)   On October 21, 2011, Plaintiff filed a Certificate of Service indicating that her expert witness disclosure was filed electronically and mailed to counsel of record. (Document 27).   Plaintiff disclosed to Defendants that Mr. Welsh would "provide expert testimony with respect to negligent hiring, training and retention by the Greenbrier County Sheriff's Department." (Defs.' Mot. to Exclude, Ex. 1.)   No other substantive information or written report was provided to Defendants. On the last day of discovery, Plaintiff provided to Defendants Mr. Welsh's curriculum vitae, his report and information regarding his opinions and qualifications. (Defendants', Roger Sheppard, Individually and in His Official Capacity as Sheriff of Greenbrier County [sic], and James Childers, in His Official Capacity as Sheriff of Greenbrier County, Memorandum of Law in Support of Motion to Exclude Patrick J. Welsh ("Defs.' Mot. to Exclude Mem.") (Document 34) at

11

4.)   Defendants contend that they have been harmed and prejudiced by Plaintiff's failure to timely provide Mr. Welsh's curriculum vitae, report and information regarding his opinions and qualifications since the discovery deadline has passed.   (*Id*. at 4-5.)   Defendants assert that they have been prevented from conducting any meaningful discovery regarding Mr. Welsh's opinion and report. (*Id*.)

In opposition, Plaintiff asserts that the parties were in the midst of settlement negotiations during the time in which her expert report was due.   Further, counsel for Plaintiff contends that he believed the parties had engaged in a "cooperative approach" in the production of Mr. Welsh's report based on emails between counsel discussing when the report would be produced.   Plaintiff contends that no unfair surprise exists which warrants exclusion of Mr. Welsh's testimony.

There is no question that Plaintiff's expert witness' written report is untimely as it was disclosed approximately two months after the deadline established in this Court's Scheduling Order.   The Court has considered the parties' respective arguments in this discovery dispute. While the Court finds that Plaintiff has not presented any meritorious contention demonstrating that she was substantially justified in failing to timely disclose Mr. Welsh's written report as required by Rule 26, the Court finds, in this particular instance and in the interest of justice, that Plaintiff's conduct is harmless.   The Court has given consideration to the fact that on February 7, 2012, the Court suspended the Scheduling Order pending resolution of the coverage issue relating to Defendant Baker,[6] and a new trial date has not been scheduled.   Therefore, the Court finds that Defendants are not prejudiced by their inability to depose Mr. Welsh prior to the close of discovery.   Based on the posture of the case, Defendants, if they so desire, could seek leave of the Court to conduct further discovery into Mr. Welsh's opinions without impacting the Court's

6   *See supra* n.5.

12

docket or the schedule in this matter.  Further, the Court has considered that the only claim asserted against these Defendants is the negligent hiring, training and supervision of personnel.[7] Therefore, it appears that Mr. Welsh's report could be evidence central to Plaintiff's claim. Finally, the Court has considered that Defendants have not asserted any argument, in their reply to Plaintiff's response to their motion for summary judgment, indicating that they are at a disadvantage on the motion due to the lack of an opportunity to depose Mr. Welsh. (*Reply to Plaintiff's Response to Defendants', Roger Sheppard, Individually and in His Official Capacity as Sheriff of Greenbrier County [sic], and James Childers, in His Official Capacity as Sheriff of Greenbrier County, Motion for Summary Judgment* ("Defs.' Reply.") (Document 35) at 3) (After referring to the instant motion to exclude, Defendants state, "[e]ven if this Court were not to exclude the report and opinions of Mr. Walsh [sic], the purported opinions are not evidence; they are legal conclusions without any factual references to the record."). Thus, upon consideration of the importance of the evidence to Plaintiff's claim, and the lack of any disruption of the Court's docket and the schedule in this litigation, the Court finds that Plaintiff's untimely disclosure is harmless.  Consequently, Defendants' motion to exclude Mr. Welsh's opinions, report and testimony should be denied.   However, should any claim survive the pending dispositive motion, the Court will permit Defendants an opportunity to conduct limited discovery of Mr. Welsh's opinions, report and qualifications for their use or their challenge of Mr. Welsh's opinion during trial.

---

7   *See infra* Section B(1)(a), Purported Section 1983 Claim.

### B. *Defendants' Motion for Summary Judgment*

#### *(1) Scope of the Complaint*

##### *a. Purported Section 1983 claim*

At the outset, the Court observes that the parties in their respective submissions on Defendants' motion for summary judgment address a purported 42 U.S.C. § 1983 claim supposedly asserted by Plaintiff.[8] The Fourth Circuit Court of Appeals has instructed that "[a] federal civil rights claim based upon § 1983 has two essential elements: '[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48, (1988)). A detailed review of the governing pleading in this matter reveals that Plaintiff has not sufficiently pled a cause of action pursuant to Section 1983.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This pleading standard requires that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). In *Ashcroft v. Iqbal*, the United States Supreme Court stated

---

8    Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

that "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

(*Id*.)   The plausibility standard "asks for more than a sheer possibility that a [party] has acted

unlawfully." (*Id*.)   Rather, "[i]t requires [a party] to articulate facts, when accepted as true, that

'show' that [the party] has stated a claim entitling [them] to relief[.]" *Francis*, 588 F.3d at 193

(quoting *Twombly*, 550 U.S. at 557).   Such "factual allegations must be enough to raise a right to

relief above the speculative level."   *Twombly*, 550 U.S. at 555.   Moreover, a statement of a claim

must give the defendant "fair notice" of the claim and the "grounds upon which it rests."   (*Id*.)

The Court observes that Plaintiff's Complaint (Notice of Removal, Ex. 1, Complaint

(Document 1-1)) features her assertion of only four common law causes of action: negligent

hiring, training and supervising of personnel (Count I), assault and battery (Count II), intentional

or negligent infliction of emotional distress (Count III) and a violation of W. Va. Code § 61-8D-5

sexual abuse by a parent, guardian, custodian or person in a position of trust to a child (Count IV).

Each claim is separately enumerated and distinguished by bold, uppercase font.   Further, Plaintiff

supports each claim with allegations in numbered paragraphs.   However, Plaintiff does not

properly assert a claim pursuant to Section 1983.   Indeed, the only explicit reference to such a

claim is made in the opening sentence to the Complaint, where Plaintiff asserts that "[T]his is an

action for money damages pursuant to 42 U.S.C. §§ 1983 and 1988, the Constitutions of West

Virginia and the United States, and under the common law of West Virginia[.]" (Complaint ¶ 1.)

In her introduction of the parties to this litigation, Plaintiff states that Defendants Baker and

Sheppard "act[ed] under the color and authority of state law[.]" (Complaint ¶¶ 3-4.)   However, Plaintiff neither alleges the violation of any specific right secured by the Constitution and laws of the United States, nor, asserts against whom such cause of action is brought.   Plaintiff has not pled the grounds upon which a Section 1983 claim is based.   For instance, for any liability to attach to a governmental entity, based on an official capacity Section 1983 claim, Plaintiff must allege, in her Complaint, the policy or custom employed by the Defendant entity, which is the basis of the constitutional violation resulting in Plaintiff's injury.   In short, Plaintiff has not alleged the elements of a Section 1983 claim or provided a factual basis or predicate in support of the claim. The mere fleeting reference to a United States statute does not suffice to assert a cause of action. Further, in light of the manner in which Plaintiff outlines the enumerated causes of action in her Complaint by separate and distinct headings and lists the allegations in support of each claim, the Court finds Plaintiff has not stated a Section 1983 claim.   This Court cannot assent to making any finding of summary judgment on a claim that is outside the scope of the Complaint.[9]   Therefore, given the Court's ruling that no Section 1983 claim has been pled, the Court finds Defendants' motion for summary judgment as to that claim to be moot.

*Supplemental Jurisdiction*

With the above finding in mind, the Court turns its attention to the claims actually asserted in this case, namely, Plaintiff's common law tort causes of action. The Court is mindful that this civil action was removed to this Court pursuant to 28 U.S.C. § 1446 and Defendants' assertion that

---

9    In their motion for summary judgment, Defendants aptly observe that Plaintiff did not plead a Section 1983 claim, but moved for summary judgment as to this claim "[f]or the purposes of the motion."   (*See* Defs.' Mot. at 7, n.1) ("[A]lthough the Complaint provides that it is an action pursuant to Sections 1983 and 1988, the claims against Mr. Sheppard and Sheriff Childers are common law causes of action for negligent hiring, training and supervision. For purposes of this Motion, these Defendants will address the purported Section 1983 claim as well as the common law claims for negligent hiring, training and supervision.")   Before the Court can consider the merits of such a claim for summary judgment purposes, the Court has to consider whether the claim has been stated.

16

this Court has "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. The purported basis for Defendants' removal was the isolated reference to 42 U.S.C. §§ 1983 and 1988 in the first line of Plaintiff's Compliant. However, as determined above, Plaintiff's purported Section 1983 claim is fatally deficient. Therefore, this Court must make a determination about its jurisdiction over the remaining claims. "The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (citing 28 U.S.C. § 1367). "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." (*Id.* at 110) (citation omitted.) A district court's consideration of retaining or declining jurisdiction may be informed by the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity and considerations of judicial economy." (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Court elects to exercise its discretion to retain jurisdiction over the state claims remaining in this case. In doing so, the Court has considered that this case was initiated over two years ago, the parties have conducted discovery (with the exception of any that may be warranted by the Court's earlier ruling), and through this dispositive motion, have narrowed the issues for consideration. Therefore, after careful consideration of the fairness to the parties and judicial economy, the Court's discretionary decision is to maintain jurisdiction over the state claims.

### b. Proper parties in this action

As identified above, Plaintiff asserts four causes of action: negligent hiring, training and supervising of personnel, common law assault and battery, intentional or negligent infliction of

17

emotional distress, and a violation of W. Va. Code § 61-8D-5 sexual abuse by a parent, guardian, custodian or person in a position of trust to a child.   (Compl., ¶¶ 16-26.)   Contrary to Plaintiff's assertion in her opposition that Sheppard is "subject to two common law claims . . . common law negligent hiring, training and supervising of personnel and common law intentional or negligent infliction of emotional distress (Pl.'s Opp'n at 8-9), the Complaint does not reveal the same.   Only the first of these claims is alleged against Defendant Sheppard. (Compl., ¶¶ 16-18.)   The balance of the common law claims are asserted against Defendant Baker.   Indeed, a review of the Complaint reveals that Plaintiff has not pled any of her four causes of action against Sheriff Childers.

Defendants move for the dismissal of Plaintiff's claim against both Defendant Sheppard and Sheriff Childers in their official capacity by asserting that the real party in interest is the Greenbrier County Commission.   In opposition, Plaintiff contends that both Sheppard and Sheriff Childers are proper parties "since they were named as the Sheriff of Greenbrier County."   She expounds that the "'official capacity suit' was filed against the Office of Sheriff, Greenbrier County who . . . reports to the County Commission." (Pl.'s Opp'n at 5.)   Plaintiff clarifies that Sheriff Childers is only a defendant in this case "in his official capacity as the current Sheriff of Greenbrier County."   (Pl.'s Opp'n at 3; *see also* Compl. ¶ 5 ("Defendant James Childers, is the current Sheriff of Greenbrier County, West Virginia.   To the extent that recovery is sought from the State or the State may be responsible for payment of judgment, recovery is sought under and up to the limits of the state's liability.")   Plaintiff contends that her "failure to name the Greenbrier County Commission is irrelevant." (*Id.*)

This Court disagrees with this litigant that her failure to name the proper party in a federal

18

civil action is "irrelevant."   The Office of the Sheriff of Greenbrier County "has no status independent of the Sheriff in his official capacity which would permit that office to be sued." *Kowalyk v. Hancock County*, Civil Action No.5:08CV181, 2009 WL 981848, *2 (N. D. W. Va. Apr. 9, 2009).   In West Virginia, it is the county commission that is authorized to sue or be sued. W. Va. Code § 7-1-1(a).[10]   In that vein, any claim against the "Office of the Sheriff of Greenbrier County" should be against the County governing body.   Defendants recognize as much in their motion.   But, "[o]fficial-capacity suits . . .   generally represent only another way of pleading an action against an entity of which an officer is an agent.   As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.   It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (internal citations and quotations omitted).   Defendants note that "[f]or the purposes of this motion, [they] will proceed as if the instant suit is against the real party in interest, the Greenbrier County Commission, a political subdivision." (Defs.' Mem. at 7 n.1.)   Given this acknowledgment, the Court will follow Defendants' lead and, for the purpose of this motion, consider the official capacity claim against Sheppard and Childers as one against the Greenbrier County Commission.

*Negligent Hiring, Training and Supervision*

In Count I, Plaintiff alleges that Sheppard negligently hired Baker by hiring him with knowledge of the Shop-in Food Stores incident, and negligently trained and supervised Baker as evidenced by Baker's "hitting on" a teenage girl while on duty.   (Compl. ¶ 17).   Negligent hiring

---

10      (a) The county commission, formerly the county court, tribunal or county council in lieu thereof, of every county within the State of West Virginia shall be a corporation by the name of "The County Commission of .......... County", or "The County Council of .......... County"   by which name it may sue and be sued, plead and be impleaded and contract and be contracted with. W. Va. Code, § 7-1-1.

is a cause of action recognized in West Virginia.  *State ex rel. West Virginia State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997).   To determine whether an employee was negligently hired, the Court's inquiry begins with the following questions:

> when the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee?  Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick v. West Virginia Dep't. of Public Safety*, 503 S.E.2d 502, 506 (W. Va. 1998) (citing *Taylor*, 499 S.E.2d at 289 n.7.)   Further, a "primary [consideration] in determining whether an employer may be held liable, based on the theory of negligent hiring or retention, is the nature of the employee's job assignment, duties and responsibilities – with the employer's duty with respect to hiring or retaining an employee increasing as the risks to third persons associated with a particular job increases."   (*Id*. at 507) (citation omitted.)   It has been concluded that "an 'employer's duty is heightened' when the prospective employee is a police officer, as an unfit police officer may pose a substantial risk to third persons."   *Woods v. Town of Danville, West Virginia*, 712 F.Supp.2d 502, 514 (S.D. W. Va. 2010) (Goodwin, C.J.); *Smith v. Lusk*, Civil No.3:10-0781, 2012 WL 1389866 (S.D. W. Va. 2012) (Chambers, J.).   The Court has not found, and the parties have not cited to, any state authority for a stand-alone claim for negligent training or supervision.   As such, those claims have been treated like other claims based in tort.   *See Pruitt v. West Virginia Dep't v. of Public Safety,* 664 S.E.2d 175, 181-82 (W. Va. 2008) (discussing negligent training); *Taylor v. Cabell Huntington Hosp. Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000) (discussing negligent supervision)..

20

Sheppard argues that Plaintiff's claim against him for negligent hiring fails as a matter of law because his decision to hire Mr. Baker was based on a reasonable investigation.   Defendants rely on Sheppard's deposition testimony that he based his decision to hire Baker upon consideration of the background check, which included the Stop-in Food Stores incident, and his passing all of the requisite tests.   Defendants assert that Sheppard does not consider himself related to Baker.   In opposition, Plaintiff contends that Sheppard did not conduct an investigation into the Stop-in Food Stores incident and that he hired his relative for the open position.

Viewing all reasonable inferences in favor of the non-moving party, Plaintiff, the Court finds that genuine disputes of material fact preclude an award of summary judgment in Defendants' favor.   There is no dispute that Sheppard knew Baker prior to hiring him as a deputy sheriff and that Baker is Sheppard's daughter-in-law's brother.   Notwithstanding Sheppard's deposition testimony that he does not "feel" that he is related to Baker, a jury is permitted to consider the credibility of that testimony.   There is evidence that Sheppard had "been around" Baker at family gatherings.  (Defs.' Ex. 4 at 8.)   A jury could find that Sheppard hired Baker because of the family relation, despite the allegations that he looked into a hole in the wall at a woman using a restroom.   Additionally, the evidence in the record indicates that a background check on Baker was conducted and Sheppard reviewed the same.   However, a jury could find that Sheppard's consideration of the background report and his conversation with Baker about the incident was not complete or reasonable.   Sheppard testified that Baker explained the Stop-in Food Stores incident by stating that "he was --- had been working on something in the bathroom and the man came in and caught him in the bathroom.   And pretty much, that's it."   (Defs.' Ex. 4 at 12.)   Sheppard also testified that Baker told him the allegation that he peeped into a hole to look

21

at a woman in a restroom was not true.   Just as Plaintiff contends, at no point did Sheppard contact the victim or her husband involved in the incident.   He testified that he did not know how to "get ahold of these people."   (Defs.' Ex. 4 at 15.)   However, the evidence in the record reveals that the victim's home address and telephone number were listed on the Greenbrier County Investigation report which Sheppard testified that he reviewed.   Further, when asked whether the Stop-in Food Stores' incident gave him "concern as to whether Mr. Baker could be a deputy sheriff," Sheppard's response reveals his disbelief of the allegations. (Defs.' Ex. at 14.) ("If they were true, it would concern – it concerned me.")   A jury could find that Sheppard discredited the allegation based on his personal knowledge of and familial relation to Baker and that his investigation was not reasonable.   Further, while the evidence indicates that Sheppard advised a psychologist about the incident prior to Baker's psychological testing, and that Baker passed the test, Sheppard testified that he did not know what that test entailed. (Defs.' Ex. 4 at 15.)   A jury could find that his failure to follow up with the psychologist about the testing and the reported incident was not reasonable. An examination of the evidence in this case could lead a jury to find that Sheppard did not conduct a reasonable investigation into Baker's background, particularly where that background revealed allegations that Sheppard, as an adult, had engaged in voyeuristic behavior involving an unsuspecting female.   A jury could conclude that Sheppard should have reasonably foreseen the risk to third persons caused by hiring Baker.   Therefore, as to Plaintiff's assertion that Sheppard negligently hired Baker as a deputy sheriff, the Court finds that summary judgment should be denied.

The Court finds likewise on the Plaintiff's assertion of negligent training.   Plaintiff alleges that Baker's conduct of "hitting on" a teenage girl demonstrates Sheppard's failings.   Here, on the

motion for summary judgment, she contends that Sheppard is liable for failing to train Baker.   In her opposition to Defendants' motion, she asserts that Sheppard failed the "most rudimentary task of providing Baker a policy and procedure manual."  (Pl.'s Opp'n at 10.)  Additionally, she contends Baker did not receive any training outside of that received at the Police Academy.   The Court finds that Plaintiff has proffered evidence that demonstrates that no policy or procedural manual was provided to Baker when he was hired and that Sheppard maintained a Rules of Conduct document in the office for Baker and others to review and read, but the document was adopted in 1985.   Additionally, the Court also recognizes that there is evidence that Baker was trained at the Policy Academy.   However, Sheppard did not know the nature or type of training received at the Academy.   Although Sheppard has testified that he believed it common sense that a law enforcement officer would have known not to commit criminal conduct, a jury could conclude that Sheppard was negligent in training Baker and that such negligence caused Plaintiff's injury.   A jury could also conclude that the knowledge possessed about the allegations of Baker's conduct at the Stop-in Food Store might have triggered an obligation for Sheppard to provide guidance to Baker about engaging in criminal acts or conduct harmful to women.   Consequently, a jury question remains as to whether Sheppard's failure to train Baker caused Plaintiff's injury. Therefore, the Court denies Defendants' motion for summary judgment as to this claim.

However, the Court finds otherwise with respect to Plaintiff's claim for negligent supervision.  Since West Virginia law does not recognize a stand-alone cause of action for this claim, "a claim for negligent supervision requires a separate finding of negligence on the part of the employee being supervised."  *Heslop v. Americans for African Adoptions, Inc*., 2012 WL 3686769, *12 (N. D. W. Va. Aug. 12, 2012) (citing *Taylor*, 538 S.E.2d at 725). Plaintiff has

alleged that Sheppard's negligent supervision is demonstrated by Baker's "hitting on" a teenage girl. However, Plaintiff has not demonstrated any genuine dispute as to any material fact that Baker acted negligently. Instead, it appears that Baker's conduct was more akin to an intentional criminal action, given the assertion that he engaged in sexual intercourse with a minor. Moreover, Plaintiff has not proven that Sheppard knew of, or disregarded, knowledge that Baker was engaging in this conduct with C.S. Further, Plaintiff has not demonstrated the causal nexus to Sheppard's supervision and Plaintiff's injury. Therefore, Defendants' are entitled to summary judgment as a matter of law as to this claim.

### (2)  Immunity

Defendants contend that they are entitled to immunity from Plaintiff's claims. This Court disagrees. The West Virginia Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1, et seq., provides that "Political subdivisions are liable for injury, death or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." W. Va. Code § 29-12A-4(c)(2). The Act further states that:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
>
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5(b).[11]  Immunity is a threshold issue, and whether one is entitled to statutory immunity is a question for the Court.   However, immunity is only appropriate "when the plaintiff has not demonstrated any genuine issues of material fact which must be resolved to determine whether the defendant's actions were reasonable under clearly established law."   *Kelly v. City of Williamson*, 655 S.E.2d 528, 534 (W. Va. 2007) (quoting *Baker v. Chaplin*, 517 N.W.2d 911, 916 (Minn. 1994)).   As should be clear above, in this case are factual disputes which impact the determination of immunity under West Virginia Code §§ 29-12A-5(b) and 29-12A-4(c)(2). Viewing the facts in the light most favorable to Plaintiff, the Court is unable to find that no reasonable jury could return a verdict in Plaintiff's favor.   As explained above, a jury could find that Sheppard's hiring and training of Baker were negligent.   If a jury were to so conclude and then find that Sheppard acted within the scope of his employment, which neither party disputes, the Greenbrier County Commission may be held liable for those acts of negligence.   Also, a jury could find, under the facts of this case, that Sheppard's actions in performing a background check on Baker, and not ensuring that Baker and others had access to training, policy and procedures, were "in bad faith, or in a wanton or reckless manner." Such a finding would eradicate any immunity afforded to Sheppard by Section 29-12A-5(b).

## *CONCLUSION*

Upon consideration of the foregoing, the Court does hereby **ORDER** that *Defendants', Roger Sheppard, Individually and in His Official Capacity as Sheriff of Greenbrier County [sic],*

---

11      The parties dispute the applicability of West Virginia Code 7-14A-4. (*See* Defs.' Mem. at 16; Pl.'s Opp'n at 8.) However, this Court has previously determined that Section 7-14A-4 conflicts with W. Va. Code § 29-12A-4(c)(2) and that Section 29-12A-4(c)(2) takes precedence over Section 7-14A-4.   (*See Webb v. Raleigh County Sheriff's Dep't.*, Civil Action No.5:09-cv-01253, 2010 WL 3702648, *7-8 (S. D. W. Va. Sept. 16, 2010).)

and James Childers, in His Official Capacity as Sheriff of Greenbrier County, Motion for Summary Judgment (Document 30) be **GRANTED IN PART AND DENIED IN PART**. The Court finds that genuine issues of material fact exist to preclude summary judgment in favor of Defendants as to Plaintiff's negligent hiring and training claims.

Further, the Court **ORDERS** that *Defendants', Roger Sheppard, Individually and in His Official Capacity as Sheriff of Greenbrier County [sic], and James Childers, in His Official Capacity as Sheriff of Greenbrier County, Motion to Exclude Patrick J. Welsh* (Document 33) be **DENIED**. To the extent the Defendants desire the opportunity to depose Plaintiff's expert prior to trial in this case, the Court **ORDERS** that Plaintiff make her expert available for deposition no later than sixty (60) days following the issuance of this order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 18, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA