IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CHERYL BALL, as guardian
and next friend of C.S., a minor

            Plaintiff,

v.                                     CIVIL ACTION NO.   5:10-cv-00955

CHRIS BAKER, et al,

            Defendants

and

WEST VIRGINIA COUNTIES GROUP
SELF-INSURANCE RISK POOL, INC.,
d/b/a WV COUNTY RISK POOL

            Intervenor.

**MEMORANDUM OPINION AND ORDER**

Intervenor, West Virginia Counties Group Self-Insurance Risk Pool, Inc., d/b/a WV County Risk Pool ("Risk Pool") moves for declaratory judgment against Defendant Chris Baker, a former deputy sheriff for the Greenbrier County, West Virginia, Sheriff's Department. (Intervenor's Motion for Declaratory Judgment (Document 43)).  The issue presented in the motion is whether Plaintiff's Complaint, which includes allegations that Baker had sex with a minor on multiple occasions while he was on duty, triggers liability coverage (that is, the duty to defend and/or to indemnify) under the General Liability Coverage provision of the Intervenor's insurance contract issued to the Greenbrier County Commission for the policy period beginning on

July 1, 2007.

After careful consideration of the Risk Pool's Motion for Declaratory Judgment (Document 43), the relevant policy language and Plaintiff's allegations, the Court finds that the Risk Pool is not required to defend or indemnify Baker.

*I.*

On June 29, 2010, Cheryl Ball, as guardian and next friend of C.S., initiated this civil action in the Circuit Court of Greenbrier County, West Virginia, against Baker, former Deputy Sheriff of Greenbrier County, Roger Sheppard, former Sheriff of Greenbrier County, and James Childers, then Sheriff of Greenbrier County, for the alleged sexual contact between Baker and C.S. Defendants removed the case to this Court on July 26, 2010. In the Complaint, Plaintiff alleged that Defendant Baker was a deputy sheriff of Greenbrier County; that "[i]n and around June and July of 2009 . . . Baker . . . enter[ed] into a conversation with [C.S.] in a parking lot and began questioning [her]"; that during June and July 2009, Baker "had sex with Plaintiff C.S. on multiple occasions, all of which occurred in Deputy Baker's police cruiser while he was on duty and in full police uniform." (Notice of Removal, Ex. 1, Complaint (Document 1-1) ¶¶ 1, 14, 15). Plaintiff alleged that Defendant Sheppard hired Baker as a law enforcement officer before June 2009 despite his knowledge that Baker had been terminated from a convenience store "for poking holes in a wall and using the holes to watch females use the restroom[]" and that Baker "was sued privately for his . . . 'peeping Tom' actions at the convenience store." (Compl. ¶¶ 10-13). Plaintiff also alleged that Defendant Sheppard is related to Baker. (Compl. ¶ 9). As a result of these allegations, Plaintiff asserted three claims against Defendant Baker: common law assault and battery, intentional or negligent infliction of emotional distress, and violation of W. Va. Code §

2

61-8D-5 sexual abuse by a parent, guardian, custodian or person in a position of trust to a child. (Compl. ¶¶ 16-26.)[1]  Plaintiff demanded past, present, and future compensatory damages, punitive damages, attorney fees, expert fees and other costs, and other damages allowable by law.

On October 17, 2011, the Risk Pool moved to intervene for the purpose of seeking a declaratory judgment that it owes no duty to defend or indemnify Baker with respect to the allegations in the Complaint. (Document 26.)   Prior to that time, the Risk Pool had been providing a defense to Baker under its reservation of rights.  On February 7, 2012, this Court granted the Intervenor's motion for leave to intervene. (*See* Memorandum Opinion and Order (Document 37)).  On the same day, the Intervenor's Complaint for Declaratory Judgment was filed (Document 38).   However, to date, no responsive pleading has been filed by any party.   The Risk Pool now moves for a declaration that the policy does not entitle Baker to a defense or indemnification.   (Document 43).   No opposition to the motion has been filed.

## II.

The Declaratory Judgment Act authorizes a district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.   District courts have discretion in deciding whether or not to make such a declaration of rights "in a case of actual controversy."  *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (1998); 28 U.S.C. § 2201.   The relief sought in a declaratory judgment action "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Penn-America*

---

1   Plaintiff also alleged a negligent hiring, training and supervising of personnel claim against Defendant Sheppard.

*Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). "It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capitol Ins. Co. v. Kapilloff*, 155 F.3d 488, 494 (4th Cir. 1998); *see Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 n.3 (4th Cir. 1994) (where it is noted that an insurance company's action seeking a declaration that it has no duty to defend or indemnify an insured against a third party's tort claim generally qualifies as an actual controversy.)

The question for the Court in consideration of this declaratory judgment inquiry is "whether the insurer had a duty to defend [and/or indemnify] under the terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E. 2d 156, 161 (1986). The "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute[, as it is in this case,] is a question of law." *Tennant v. Smallwood*, 568 S.E.2d 10, 14 (2002) (citations and quotation omitted). By and large, an insurer's duty to defend "is broader than" its duty to indemnify, since an insurer typically must defend its insured if a claim against the insured 'could, without amendment, impose liability for risks the policy covers.'" *Bowyer v. Hi-Lad, Inc.*, 609 S.E.2d 895, 912 (2004); *Horace Mann v. Leeber*, 376 S.E.2d 581, 584 (1988). Under West Virginia law, a liability insurer's "duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." (*Id*. at 160.) (citations omitted). The complaint "need not 'specifically and unequivocally make out a claim within the coverage[]'" to invoke the duty to defend. (*Id*. 342 S.E.2d at 160). "However, [if] the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its

4

duties under the policy." *Bowyer*, 609 S.E.2d at 912.

It has long been recognized that "since insurance policies are prepared solely by insurers, any ambiguities in the language of insurance policies must be construed liberally in favor of the insured." *Pitrolo*, 342 S.E.2d at 160 (citations omitted); *Leeber*, 376 S.E.2d at 584 (this principle applies to the insurer's duty to defend and to pay). Therefore, "any question concerning an insurer's duty to defend under an insurance policy must be construed liberally in favor of an insured where there is any question about an insurer's obligations." (*Id.*) However, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co. of America*, 172 S.E.2d 714, 715 (1970). Finally, "if part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims." *Leeber*, 376 S.E.2d at 584.

### III.

This Court's examination of whether the Risk Pool has a duty to defend and/or indemnify Baker fundamentally requires an evaluation of both the pertinent portions of the general liability policy and Plaintiff's allegations. The insurance policy at issue provides that the Risk Pool will:

> [P]ay on behalf of the **Member** all sums which the **Member** shall be obligated to pay by reason of the liability imposed upon the **Member** by law or assumed by the **Member** under contract or agreement for damages on account of **Personal Injuries** . . . suffered or alleged to have been suffered by any person or persons . . . arising out of any **Occurrence** during the Contract Period from any cause other than as covered by Sections III (**Auto**), IV (**Crime**) and V (**Public Officials**) of the Contract, including, but limited to, **Products Liability** and/or **Completed Operations**, **Host Liquor Liability**, **Incidental Malpractice**, Broad from **Property Damage**

> liability and employee benefits liability;
>
> [P]ay on behalf of the **Member** all costs and expenses incurred in the investigation, adjustment, settlement, defense and appeal of any claim or suit for which coverage is afforded by this Section II (General Liability) of this Contract.

(General Liability Coverage, § II(C)(1) and (2) (Document 26-1) at 22).[2] An "occurrence" is defined as

> "an accident or happening or event or a continuous or repeated exposure to conditions which result in **Personal Injury** or **Property Damage** during the Contract Period. All **Personal Injuries** to one or more persons and/or **Property Damage** arising out of an accident or a happening or event or continuous or repeated exposure to conditions shall be deemed an Occurrence (i.e. hurricane)."

(*Id*. § II(B)). The Insurance Contract outlines the term "Personal Injury" to mean a multitude of harms, including: bodily injury, shock, sickness or disease; assault and battery; mental injury, mental anguish, and humiliation.[3] (*Id*. § II(K)(13) at 30).

As an initial matter, the Court finds that the Risk Pool does not dispute that Baker is included as an "insured" or "covered person" under the Insurance Contract or that his alleged misconduct would qualify as an "occurrence" as that term is used in the Insurance Contract. Therefore, the Court is only required to determine whether the policy's exclusions have been triggered.

The Insurance Contract qualifies the extent of coverage provided to the Greenbrier County Commission by mandating that coverage "does not apply" to numerous exclusions, including three raised by the Risk Pool: "Expected Intended Injury," "Fraud and Dishonesty," and "Punitive

---

2   The Risk Pool attached a copy of the insurance contract issued to the Greenbrier County Commission for the contract period beginning June 1, 2007, to its Complaint for Declaratory Judgment (Document 26-1).

3   The term "bodily injury" is further explained as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at anytime." (*Id*. § II(K)(2) at 28).

Damages."  The Court will review each cited exclusion.

First, the Risk Pool offers that the "clear and enforceable exclusion for 'expected or intended injury'" applies to bar coverage in this matter since "[a]ll of the allegations in this case arise from the alleged misconduct of [D]efendant Baker in engaging in an inappropriate sexual relationship with a minor." (Memorandum of Law in Support of Intervenor's Motion for Declaratory Judgment ("Risk Pool's Motion") (Document 44) at 5.)  Relevant to this dispute, the term "expected or intended injury" is defined in the general liability section as:

> Expected or Intended Injury
>
> **Personal injury** or **Property Damage** expected or intended from the standpoint of a **Covered Person**.  This exclusion shall also include any willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the Member and any action or statement made by or at the direction of the Member with knowledge of the falsity thereof. [4]

(*Id*. § II(H)(1) at 24).  The Risk Pool argues that this case requires the result determined in *Horace Mann v. Leeber*.  The West Virginia Supreme Court of Appeals in *Leeber* considered an insurer's declaratory judgment action which sought a determination that it had no duty to defend or indemnify a teacher who sexually assaulted a minor student.  The insurer contended that its "intentional injury" exclusion operated to deny the coverage.  The state court cited approvingly to the majority view's objective test, which recognized that an "insured must have intended not only the act (the alleged sexual contact) but must have intended to cause *some* kind of *injury*." *Leeber*, 376 S.E.2d at 585.  The state court held "that there is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly caused by the sexual misconduct of an

---

4  Covered Person under this Insurance Contract provision encompasses the covered political subdivision named in the contract and its employees.  (*Id*. § II(K)(5) at 29).

insured, when the liability insurance policy contains a so-called 'intentional injury' exclusion. In such a case, the intent of an insured to cause some injury will be inferred as a matter of law." *Leeber*, 376 S.E.2d at 587. In this case, Plaintiff alleges Baker, as a result of engaging in sexual conduct with C.S., assaulted and battered her which resulted in C.S. suffering trauma, severe emotional distress and other damages; caused C.S. to suffer and sustain intentional or negligent emotional distress; and violated W. Va. Code 61-8D-5, statute penalizing sexual abuse by a person in a position of trust to a child. The nature of the alleged conduct in this case yields the obvious conclusion that personal injury was "expected or intended from the standpoint of a covered person," here Baker, since his actions were intentional and his intention to cause injury can be legally inferred. Consequently, the Court finds that the "expected intended injury" exclusion proffered by the Risk Pool suffices to relieve it of the duty to indemnify and defend Baker.

The Court is not persuaded that Plaintiff's attempt to assert a claim for negligent infliction of emotion distress alters this finding.[5] The Court agrees with *Leeber* that the isolated referenced "negligent" conduct in the complaint is "a transparent attempt to trigger insurance coverage by characterizing allegations of intentional tortious conduct under the guise of 'negligent' activity.'" *Leeber*, 376 S.E.2d at 587 (quoting *Harpy v. Nationwide Mut. Fire Ins. Co*., 76 Md.App. 474, 487 (1988)); *American States Ins. Co. v. Fishes Hot Dog Huntington, Inc.*, No.CIV.A.3:98-0165, 1999 WL 33510174, *3 (S.D. W. Va. Jan. 22, 1999) (mere use of the term "negligent" in the complaint

---

5   Plaintiff alleges in Count III that "Defendant Baker caused Plaintiff C.S. to suffer and sustain intentional or negligent emotional distress. Defendant Baker caused Plaintiff C.S. to see a psychologist. The conduct of Defendant Baker was intolerable, extreme, and outrageous, and therefore exceeded the bounds of decency in a civil society." (Compl. ¶ 24.) In West Virginia, to assert a negligent infliction of emotional distress, a "plaintiff must establish that 'his or her serious emotional distress was reasonably foreseeable, that the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress as a direct result of witnessing the victim's critical injury or death.'" *B.E. v. Mount Hope High School*, Civil Action No. 2:11-cv-00679, 2012 WL 3580190, *10 (S.D. W. Va. Aug. 17, 2012) (quoting *Heldreth v. Marrs*, 188 W. Va. 481, 482 syl.pt.2 (1992)); *Jones v. Sanger*, 512 S.E.2d 590, 594 (1998).

8

does not trigger an insurer's duty to defend.) The nature of Plaintiff's claim is grounded in intentional conduct, not negligence.

Second, although relieved of its duty to defend and indemnify Baker pursuant to the "intentional injury" exclusion, the Risk Pool also asserts that the Insurance Contract provision excluding coverage for damages "brought about or contributed to by the fraudulent, dishonest or criminal behavior of any Covered Person[]" is also triggered by the allegations in Plaintiff's complaint. The Insurance Contract excludes coverage for claims:

> Brought about or contributed to by the fraudulent, dishonest, or criminal behavior of any **Covered Person**; however, notwithstanding the foregoing, the **Member** and a **Covered Person** shall be protected under the terms of the Contract as to any claims upon which suit is brought against them by reason of any alleged dishonesty on their part unless a judgment or other final adjudication thereof adverse to them shall establish that acts of active and deliberate dishonesty committed by them with actual dishonest purpose and intent were material to the cause of action so adjudicated.

(*Id*. §II(H)(2) at 24). The Risk Pool asserts that the policy's specific exclusion for criminal behavior "is placed prominently in the policy" and requires the finding that it owes no duty to defendant to indemnify Baker. Specifically, the Risk Pool contends that in Count Four, Plaintiff alleges that Baker's conduct violates W. Va. Code § 61-8d-5, or the statute governing sexual abuse by a parent, guardian or custodian. Plaintiff has alleged that Baker's actions contravene a West Virginia criminal statute because he was a law enforcement officer, in uniform, and in a position of trust when he allegedly engaged in sexual intercourse with C.S. This is an allegation of criminal conduct which is excluded from coverage in the relevant policy exclusion. While criminal conduct is not defined in this provision and is discussed in the context of fraudulent or dishonest behavior, the Court finds the provision to be unambiguous. Additionally, the language of the provision

9

relative to "any claims upon which suit is brought against them by reason of any alleged dishonesty on their part" is not relevant to the allegations asserted by Plaintiff. Consequently, the Court finds that Plaintiff's claim in Court Four does not require the Risk Pool to defend or indemnify Baker.

Finally, Risk Pool asserts that it does not have the duty to defend or indemnify Baker for any punitive damages sought by Plaintiff. The Risk Pool asserts that its punitive damages provision specifically excepts the obligation to pay for "punitive damages or exemplary damages, fines or statutory penalties, whether imposed by law or otherwise." (Risk Pool's Motion at 8.) According to the Intervenor, this provision is valid and enforceable. The Insurance Contract provides that the general liability coverage does not apply to:

> Any amount which the **Member** may become obligated to pay for punitive damages or exemplary damages, fines or statutory penalties, whether imposed by law or otherwise; this exclusion, however, shall not apply if the officer, official, employee or volunteer was acting in the official performance of the duties of their position and did so without willful neglect of duty or bad faith[.]

(*Id.* § II(H)(11) at 25). Based on this language the Court finds that the Risk Pool has properly asserted the punitive damage exclusion. By express declaration, the Risk Pool does not have an obligation to pay for any judgment of punitive damages which may be awarded against Baker. Plaintiff alleges that Baker engaged in sexual misconduct with C.S. while he was on duty. However, it is obvious that no dispute exists that Baker's actions were not "in the official performance of the duties of his position." Therefore, the Court finds that Baker is not entitled to the defense and indemnity of the Risk Pool for punitive damages.

*IV.*

Upon consideration of the foregoing, the Court does hereby **ORDER** that the *Intervenor's Motion for Declaratory Judgment* (Document 43) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:   December 11, 2012

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA